IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Carlino East Brandywine, L.P. | : | |
| | : | |
| v. | : | No. 752 C.D. 2025 |
| | : | |
| East Brandywine Township, Jason R. | : | Argued: May 12, 2026 |
| Winters, George Scherbak, Brandywine | : | |
| Village Associates, L.P., L&R | : | |
| Partnership, LLC, Leonard G. Blair, | : | |
| individually and as general partner of | : | |
| L&R Partnership, Richard J. Blair, | : | |
| individually and as general partner | : | |
| of L&R Partnership, John R. Cropper, | : | |
| individually and as general partner of | : | |
| L&R Partnership, and John Doe | : | |
| Corporations and Individuals | : | |
| | : | |
| Appeal of: Brandywine Village | : | |
| Associates, L.P., L&R Partnership, LLC,: | | |
| Leonard G. Blair, Richard J. Blair, | : | |
| and John R. Cropper | : | |


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE MATTHEW S. WOLF, Judge


OPINION
BY JUDGE McCULLOUGH                    FILED: June 11, 2026


Brandywine Village Associates, L.P. (Brandywine) and L&R Partnership, LLC, (L&R), Leonard G. Blair, Richard J. Blair, and John R. Cropper (collectively, Appellants) appeal from the order entered by the Court of Common Pleas of Chester County (trial court) on January 31, 2025, granting Carlino East Brandywine, L.P. (Carlino) permanent injunctive relief enjoining Appellants from interfering with Carlino's development of its property. On appeal, Appellants challenge the trial court's

grant of Carlino's motion *in limine* seeking to preclude Appellants from presenting certain evidence on the basis of collateral estoppel because of a prior declaratory judgment action. After careful review, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

## I. Background

The relevant facts and procedural history of this case are as follows.[1] Carlino owns an undeveloped 10-acre tract of land located at 1279 Horseshoe Pike in East Brandywine Township, Chester County, Pennsylvania (Property). The Property is zoned for mixed use commercial development, and Carlino has attempted to develop its Property with a shopping center anchored by a Giant Food store since 2010. Brandywine owns an 11.5-acre parcel adjacent to the Property containing a shopping center with a grocery store, Cropper's Market, and L&R owns a vacant 8-acre parcel located north of the Property. In order to develop the shopping center, the Township required Carlino to construct a new public road connecting two state roads, Horseshoe Pike and North Guthriesville Road (Connector Road), to address traffic concerns. The Connector Road would traverse the eastern side of the Property and extend north over L&R's adjoining property.

On August 20, 2014, the Township and Carlino entered into a Memorandum of Understanding (MOU), whereby the Township would condemn a portion of L&R's parcel pursuant to Section 307 of the Eminent Domain Code[2] and Carlino would build the Connector Road. The MOU obligated Carlino to pay for all costs associated with the Connector Road, in exchange for receiving a credit against

---

[1] The parties' dispute has spanned more than a decade and we recount only the facts necessary to resolve the issues on appeal.

[2] 26 Pa.C.S. § 307 (governing the possession, right of entry, and payment of just compensation for land condemned for a public purpose in condemnation proceedings).

the Township's traffic impact fee. (Reproduced Record (R.R.) at 816a-25a.) On November 17, 2014, the Township condemned portions of L&R's property including a 1.9-acre parcel and paid Appellants $104,000.00 for the condemned land.

**Carlino's Development Plan Approval**

On June 6, 2019, the Township conditionally approved Carlino's final development plan, last revised on October 30, 2018, to build the shopping center (Approval). The Township Board of Supervisors' (Board) order approving the plan included the following condition (Condition No. 17) addressing the Township's traffic impact fee:

> 17. [Carlino] shall pay a traffic impact fee equal to $1,410,031.08 as required by the Township's Transportation Impact Fee Ordinance. [Carlino] shall be entitled to a credit in the amount of actual construction costs for the Connector Road that [Carlino] incurs, as approved by the Township engineer. The amount of the credit for the construction of the Connector Road will be determined based upon actual costs and expenses paid by [Carlino] from its funds as submitted by [Carlino] to the Township upon completion of the Connector Road. The Township shall determine what categories of costs and expenses are subject to the credit. [Carlino] shall submit to the Township all information requested by the Township to verify the costs and expenses. This decision does not determine the amount of the credit; some of the impact fee may be due from [Carlino] after the final determination of the amount of the credit. Moreover, **if [Carlino] is eligible for and is awarded grant funding (or other award, donation, contribution or subsidy of any kind) which may be used to offset its soft and hard costs and expenses in constructing the Connector Road, [Carlino] shall accept said award and the amount of credit that [it] is entitled to shall be reduced by the amount of said grant, award, donation, contribution or subsidy**.

(R.R. at 2251a-52a) (emphasis added).

Brandywine appealed the Approval to the trial court, which affirmed the decision on April 16, 2020. This Court ultimately affirmed the trial court's order on July 20, 2021. *See Brandywine Village Associates v. East Brandywine Township Board of Supervisors*, (Pa. Cmwlth., No. 499 C.D. 2020, filed July 20, 2021).

While the appeal of the Approval was pending, on December 23, 2019, Carlino and the Township entered into a land development agreement (LDA), which addressed the traffic impact fee differently than Condition No. 17, and read in pertinent part as follows:

> If Carlino is eligible for and is awarded grant funding (or other award, donation, contribution or subsidy of any kind) which may be used to offset its soft and hard costs and expenses in constructing the Connector Road and its cost to acquire the land on which the Connector Road is to be constructed, Carlino shall accept said award and the **amount of credit that Carlino is entitled to shall be reduced by the percentage of the grant that is determined by dividing the total costs of the Connector Road and the cost to acquire the land on which the Connector Road will be located by the total cost of the development of the Carlino Property (land, construction of Connector Road, site and associated improvements, construction of buildings to be constructed by Carlino)**[.] If the actual cost of construction of the Connector Road, reduced by the portion of any grant allocated to the cost to construct the Connector Road by the application of the foregoing percentages, is less than $1,410,031.08, Carlino shall pay that difference to the Township at the time of the issuance of the first certificate of occupancy for the Shopping Center. . . .

(R.R. at 1767a) (emphasis added).

4

## The Trial Court's First Injunction

On March 4, 2021, nearly a year after the trial court affirmed the Approval, two members of the Board, Jason R. Winters and George Scherbak (Supervisor Defendants) adopted a resolution (Board Resolution No. 3) to return approximately one acre of L&R's condemned land on the purported basis that it was not needed to construct the Connector Road (Excess Land). (R.R. at 1023a.) On March 29, 2021, counsel for Appellants sent a letter to the Township demanding the return of the Excess Land. (R.R. at 1026a.) On December 14, 2021, after learning of this issue from neighbors, Carlino filed the instant action seeking injunctive relief to invalidate any transfer of the Excess Land and requesting an order enjoining Appellants from taking further action to undermine the Approval. At a December 16, 2021 Board meeting, the Supervisor Defendants voted to approve a "settlement agreement" pursuant to which the Township would transfer the Excess Land to Appellants (Settlement Agreement), and the measure was approved by a 2-1 vote. (R.R. at 1092a-98a.) The Board's membership changed shortly thereafter, in January of 2022, following a November 2021 election. (R.R. at 2269a.)

The trial court held a hearing on Carlino's request for an injunction and issued an order on April 11, 2022, determining that the Settlement Agreement was invalid in its entirety and directing the Township to take all steps necessary to unwind it. This Court, however, vacated the trial court's order in July of 2023 and remanded for further proceedings because, although the trial court applied the six-part preliminary injunction test in crafting its order, the substance of the relief it granted amounted to a permanent, rather than a preliminary, injunction. *See Carlino East*

5

*Brandywine L.P. v. East Brandywine Township*, (Pa. Cmwlth., No. 367 C.D. 2022, filed July 11, 2023).[3]

On October 5, 2023, the Board adopted a resolution rescinding the Settlement Agreement in its entirety (Resolution No. 8).  (R.R. 2268a-71a.)

**Carlino's Motion *In Limine* Claiming Collateral Estoppel**

On remand to the trial court, Carlino renewed its request for injunctive relief.  On September 13, 2024, Carlino filed a motion *in limine* arguing that Appellants are collaterally estopped from presenting evidence indicating that Carlino had not obtained valid approval to build the shopping center.   (R.R. at 1764a-72a.)  Specifically, Carlino sought to bar Appellants from introducing evidence that Carlino breached Condition No. 17 of the Approval concerning the traffic impact fee because

---

[3]  This Court has set forth the elements of this six-part test as follows:

> First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages.  Second, the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings.  Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct.  Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits.  Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity.  Sixth and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

*Department of Agriculture by Redding v. Miller*, 329 A.3d 145, 151 (Pa. Cmwlth. 2025).  In contrast, in order to obtain a permanent injunction, "the party seeking relief must establish that his right to relief is clear, that an injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from refusing rather than granting the relief requested." *Grant Schmidt, Shot Tec, LLC v. Paris*, 344 A.3d 78, 97 (Pa. Cmwlth. 2025).

it later entered into the LDA containing a different provision. Carlino maintained that because Appellants previously brought a declaratory judgment action seeking to invalidate the LDA as violative of the Pennsylvania Prevailing Wage Act (Wage Act)[4] in which it raised this same issue, they were collaterally estopped from relitigating it. (R.R. at 1767a-68a.)

Appellants countered that, in the prior declaratory judgment action, the trial court held only that they lacked standing to bring the case under the Wage Act, and that the prior litigation did not preclude them from arguing in this equitable action that Carlino has not complied with Condition No. 17. (R.R. at 1916a-17a.) According to Appellants, the formula used in the LDA, instead of the original terms set in Condition No.17 of the Approval, resulted in a $771,000.00 loss in fees to the Township.

By way of background for the collateral estoppel claim, Appellants filed a declaratory judgment action in May of 2020 seeking to invalidate the LDA as violative of the Wage Act. (R.R. at 1815a.) According to Appellants, the LDA was void because it provided for Carlino's construction of the Connector Road without complying with the Wage Act. The trial court granted Carlino's motion for summary judgment on June 15, 2023, holding, *inter alia*, that Appellants lacked standing because they failed to demonstrate the requisite harm. (R.R. at 1824a.) The trial court additionally rejected Appellants' argument that they had taxpayer standing to bring the action. (R.R. at 1827a.) This Court affirmed the trial court's decision on appeal, and in doing so relied on the trial court's rationale for granting summary judgment. *See Brandywine Village Associates, L.P. v. East Brandywine Township*, (Pa. Cmwlth., No. 760 C.D. 2023, filed May 28, 2024).

---

[4] Act of Aug. 15, 1961, P.L. 987, *as amended*, 43 P.S. §§ 165-1—165-17.

In this case, after considering the parties' submissions on the motion *in limine*, the trial court entered an order granting Carlino's motion on September 30, 2024, finding that Appellants were collaterally estopped from presenting the evidence at issue because of the prior declaratory judgment litigation. (R.R. at 2084a.) The trial court held a hearing on the permanent injunction on September 30 and October 1, 2024, after which it directed the parties to file briefs. On January 31, 2025, the trial court issued a permanent injunction enjoining Appellants from taking any action to undermine Carlino's development of the Property. The trial court also declared the Settlement Agreement and Board Resolution No. 3 void, and upheld Board Resolution No. 8 rescinding the Settlement Agreement. (Trial Ct. Op. and Order, 1/31/25, at 26-27.) In doing so, the trial court concluded that the Settlement Agreement authorizing transfer of the Excess Land violated Carlino's rights under Section 508 of the Municipalities Planning Code (MPC), 53 P.S. § 10508, and that issuance of permanent injunctive relief was necessary because Carlino lacked an adequate remedy at law. *Id.* at 13-14, 19, 21.[5] The trial court denied Appellants' motion for post-trial relief on May 27, 2025.

Appellants filed a notice of appeal on May 30, 2025, followed by a court-ordered Concise Statement of Errors Complained of on Appeal. *See* Pa.R.A.P.

---

[5] Section 508 of the MPC provides in relevant part as follows:

> (ii) When an application for approval of a plat, whether preliminary or final, has been approved without conditions or approved by the applicant's acceptance of conditions, no subsequent change or amendment in the zoning, subdivision or other governing ordinance or plan shall be applied to affect adversely the right of the applicant to commence and to complete any aspect of the approved development in accordance with the terms of such approval within five years from such approval. . . .

53 P.S. § 10508(4)(ii).

1925(b). The trial court entered an Rule 1925(a) opinion on July 28, 2025, in which it addressed Appellants' challenge to its ruling on Carlino's motion *in limine* as follows:

> [Appellants] contend we erred by excluding evidence that [Carlino] had violated conditions of its land development approval. [Appellants] are referencing Condition [No.] 17 of the Township's approval of [Carlino's] development plan requiring [it] to accept a grant that may be used to pay for the Connector Road's construction and to use the amount of the grant money to offset the impact fee credits to [Carlino] for building the road. [Appellants] raised this issue when they appealed from the dismissal of [their] declaratory judgment action, which was brought to invalidate the December 23, 2019 [LDA]. *Brandywine Village Associates v. East Brandywine* [*Township*], 2024 WL 2721533 (Pa. Cmwlth. May 28, 2024). In our June 15, 2023, decision on that matter, we granted summary judgment to Carlino and the Township holding that the [Appellants] **lacked standing to bring claims to invalidate the [LDA]**. On appeal, [Appellants] argued that the [LDA] violated the same condition of approval, and the Commonwealth Court affirmed our decision. [Appellants] are collaterally estopped from relitigating the issue in these proceedings.

(Trial Ct. Op.,7/28/25 at 2) (emphasis added). The trial court entered judgment on its order issuing the injunction on October 15, 2025.

## II. Issues

At the heart of this appeal is Appellants' challenge to the trial court's grant of Carlino's motion *in limine* determining that they were collaterally estopped from presenting evidence concerning the difference between the LDA and Condition No. 17 because of the prior declaratory judgment litigation. Appellants also raise a number of arguments contesting the trial court's conclusion that the Settlement Agreement is invalid, including the court's finding that the Settlement Agreement violates Section

9

508(4) of the MPC. Appellants further maintain the trial court erred in upholding Board Resolution No. 8 rescinding the Settlement Agreement, as that issue is the subject of a separate appeal.

### III. Analysis[6]

We first address the trial court's collateral estoppel ruling, as it is dispositive to the instant appeal. Appellants contend that the trial court's exclusion of evidence relating to the significant difference between Condition No. 17 and the LDA deprived them of the ability to present evidence demonstrating Carlino lacked a clear right to relief. (Appellants' Br., at 6, 20-30.) Appellants also maintain that the trial court's erroneous ruling prevented them from developing the affirmative defense of unclean hands.[7] *Id.* at 27.

We begin by reiterating that, in order to obtain a permanent injunction, "the party seeking relief must establish that his right to relief is clear, that an injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from refusing rather than granting the relief requested." *Grant Schmidt, Shot Tec, LLC*, 344 A.3d at 78. Here, as noted, Appellants contest the grant of the motion *in limine* on the basis that the ruling prevented them from challenging the first element, *i.e.*, that Carlino lacked a clear right to relief.

---

[6] "[W]hen reviewing the grant or denial of a final or permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law." *Buffalo Township v. Jones*, 813 A.2d 659, 664 (Pa. 2002). The issue of the application of the doctrine of collateral estoppel is a legal question, pursuant to which our standard of review is *de novo* and our scope of review is plenary. *Sheils as Trust for Smith & Morris Holdings, LLC v. Bartles*, 295 A.3d 302, 308 (Pa. Cmwlth. 2023).

[7] In a proceeding seeking injunctive relief, under the doctrine of unclean hands, "[a] court may deprive a party of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue." *Barcia v. Fenlon*, 37 A.3d 1, 5 (Pa. Cmwlth. 2012).

"Collateral estoppel, or issue preclusion, is a doctrine which prevents the re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated." *Office of Disciplinary Counsel v. Anonymous Attorney*, 331 A.3d 523, 531 (Pa. 2025). The doctrine applies where:

> (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a **final adjudication on the merits**; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) **the determination in the prior proceeding was essential to the judgment**.

*Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 51 (Pa. 2005) (emphasis added).

Our Supreme Court has stated that "[i]t is axiomatic that in order for [] collateral estoppel . . . to apply, the issue or issues must have been **actually litigated** and determined by a valid and final judgment." *In re Estate of Plance*, 175 A.3d 249, 271 (Pa. 2017) (emphasis added). Thus, "[c]ollateral estoppel acts to foreclose litigation in a later action of issues of law or fact that were **actually litigated and necessary to a previous final judgment**." *Griffis v. Workers' Compensation Appeal Board*, 327 A.3d 694, 711 (Pa. Cmwlth. 2020) (emphasis original).

This Court's decision in *Commonwealth ex rel. Corbett v. Desiderio*, 698 A.2d 134 (Pa. Cmwlth. 1997), is instructive. In that case, the Pennsylvania Attorney General brought a complaint *in quo warranto* in our original jurisdiction to remove Desiderio, a borough council member who had been convicted of a conflict of interest

11

charge, from office.[8]  The complaint alleged that Desiderio was disqualified from holding office under article II, section 7 of the Pennsylvania Constitution.[9]  Desiderio filed preliminary objections to the complaint, arguing that the case was barred by the doctrine of collateral estoppel because the issue alleging his disqualification from office had already been raised in a prior action brought by a group of electors.  This Court disagreed, and observed that because the prior litigation was dismissed for lack of standing "the issue of whether Desiderio should be removed from public office . . . was not actually litigated."  *Id.* at 140.  We explained:

> [w]hile the action brought by the electors of the Municipality of Clairton sought to remove Desiderio from public office, that action was clearly dismissed based on a lack of standing. The issue of whether Desiderio should be removed from public office pursuant to art. II, § 7 of the Pennsylvania Constitution was not actually litigated.  Accordingly, we will not dismiss the instant action on the basis of collateral estoppel[.]

*Id.*

Similarly here, the declaratory judgment action brought by Appellants in the prior proceeding was dismissed based on a lack of standing under the Wage Act.  Thus, the underlying issues in that case were not "actually litigated" in that proceeding.  *See id.*  Further, to the extent the trial court heard evidence concerning the validity of the LDA, any discussion thereof was not "essential to the final judgment," as the trial

---

[8] *See* Section 3 of the State Ethics Act, Act of October 4, 1978, P.L. 883, *as amended*, 65 P.S. § 403.

[9] "No person hereafter convicted of embezzlement of public moneys, bribery, perjury or other infamous crime, shall be eligible to the General Assembly, or capable of holding any office of trust or profit in this Commonwealth."  Pa. Const. Art. II, § 7.

court's holding squarely rested on Appellants' lack of standing. *See Griffis*, 327 A.3d at 711.

We further observe that in the declaratory judgment action, Appellants challenged the validity of the LDA as violative of the Wage Act. Because the instant action does not implicate the LDA's violation of any statutory requirements, the first element of the collateral estoppel doctrine requiring identity of the issues is not met. *See Office of Disciplinary Counsel*, 889 A.2d at 51.

Based on the foregoing, we conclude that the trial court erred by precluding Appellants from presenting the evidence at issue based on the doctrine of collateral estoppel where the requirements for applying the doctrine were not satisfied. Appellants aver that this evidence was crucial to their arguments opposing imposition of the permanent injunction. However, because the trial court excluded the evidence for an erroneous reason, the court did not make findings regarding its relevance or weight in the context of granting equitable relief. We therefore vacate the trial court's order and remand[10] for further proceedings consistent with this opinion, including an evidentiary hearing, if necessary.[11]

_____
PATRICIA A. McCULLOUGH, Judge

Judge Fizzano Cannon did not participate in the decision for this case.

---

[10] We reiterate that this contentious litigation between the parties has been dragging on for ten years, with multiple appearances before this Court. We therefore strongly encourage the parties and the trial court to expedite the proceedings on remand, with an eye toward finally resolving this matter.

[11] Given our disposition of Appellants' first issue, we need not reach their remaining arguments raised on appeal. We also dismiss Appellants' application requesting that we remand this case to the trial court for disposition of its motion to recuse as moot.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Carlino East Brandywine, L.P. | : | |
| | : | |
| v. | : | No. 752 C.D. 2025 |
| | : | |
| East Brandywine Township, Jason R. | : | |
| Winters, George Scherbak, Brandywine | : | |
| Village Associates, L.P., L&R | : | |
| Partnership, LLC, Leonard G. Blair, | : | |
| individually and as general partner of | : | |
| L&R Partnership, Richard J. Blair, | : | |
| individually and as general partner | : | |
| of L&R Partnership, John R. Cropper, | : | |
| individually and as general partner of | : | |
| L&R Partnership, and John Doe | : | |
| Corporations and Individuals | : | |
| | : | |
| Appeal of: Brandywine Village | : | |
| Associates, L.P., L&R Partnership, LLC,| : | |
| Leonard G. Blair, Richard J. Blair, | : | |
| and John R. Cropper | : | |

## *ORDER*

AND NOW, this 11th day of June, 2026, the January 31, 2025 order entered by the Court of Common Pleas of Chester County is hereby VACATED. Case remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge